

**FILED**

JUL 1 5 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 09-33825-B-13 |
| ABEL CHAVEZ and TANNIA CHAVEZ, | |
| Debtor(s). | Adversary No. 10-2197-B |
| | DCN N/A |
| ABEL CHAVEZ, et al., | |
| Plaintiff(s), | |
| vs. | Date:  November 18, 2010 |
| | Time:  11:30 a.m. |
| MORTGAGE ELECTRONIC SYSTEM, INC., et al., | Place: U.S. Courthouse |
| | Courtroom 32 |
| | 501 I Street |
| Defendant(s). | Sacramento, CA 95814 |

**MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter came on for final hearing on November 18, 2010, at 11:30 a.m.  Appearances are noted on the record.  At the conclusion of the hearing the court took the matter under submission.   The following constitutes the court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

**DECISION**

The motion is granted in part and denied in part to the extent set forth herein.  The motion's request for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied as to all claims for relief.  The motion's requests, pursuant to Fed. R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first, second, fourth and fifth claims for relief contained in the first

-1-



amended complaint filed on June 30, 2010 (Dkt. 13)(the "FAC"),
are granted as to moving defendants Mortgage Electronic System,
Inc. ("MERS"), IMB HoldCo, LLC ("IMB HoldCo"), IMB Management
Holdings, LLP  ("IMB Management"), OneWest Bank Group, LLC
("OneWest Group") and OneWest Venture, LLC ("OneWest Venture"),
and those claims are dismissed as to defendants MERS, IMB HoldCo,
IMB Management, OneWest Group and OneWest Venture without leave
to amend.  The motion's requests, pursuant to Fed. R. Civ. P.
12(h)(2) and (b)(6), for dismissal of the first, second, fourth
and fifth claims for relief as to moving defendant OneWest Bank,
FSB ("OneWest Bank") are granted as to defendant OneWest Bank
with leave to amend.  The motion's request for dismissal of the
third claim for relief as to defendants MERS, IMB HoldCo, IMB
Management, OneWest Group, OneWest Venture and OneWest Bank
(collectively, the "Moving Defendants") is granted as to Moving
Defendants without leave to amend.  On or before August 12, 2011
the plaintiffs shall file a second amended complaint that is
consistent with this ruling.  If the plaintiffs wish to include
in the complaint claims for relief against any or all of MERS,
IMBHoldCo, IMB Management, OneWest Group and OneWest Venture, the
plaintiffs shall file a motion requesting permission to include
those defendants in the second amended complaint, shall file and
serve said motion on or before August 5, 2011, and shall set said
motion on the first available calendar which provides proper
notice to parties in interest.  If filed, the motion to amend
shall set forth the specific factual allegations which the

-2-

1  plaintiffs would include in the second amended complaint as to

2  those parties which the plaintiffs seek to include as named

3  defendants.  If filed, the motion to amend will also toll the

4  August 12, 2011 deadline for filing the second amended complaint

5  set forth above pending the resolution of the hearing on the

6  motion to amend.

7  **FACTUAL BACKGROUND**

8  By this motion, Moving Defendants move for judgment on the

9  pleadings under Fed. R. Civ. P. 12(c), made applicable to this

10  adversary proceeding by Fed. R. Bankr. P. 7012.

11  The FAC alleges five causes of action for 1.) Declaratory

12  Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11

13  U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement

14  Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

15  The FAC grounds its claims for relief on the following

16  alleged facts.  The plaintiff debtors Abel and Tannia Chavez (the

17  "Debtors") own real property located at 18 Dakota Court,

18  Sacramento, California (the "Property").  The Property is the

19  Debtors' personal residence.  On March 10, 2006, the Debtors

20  executed an adjustable rate promissory note (the "Note") payable

21  to the order of American Mortgage Netwok, Inc. ("American

22  Mortgage") for the purpose of obtaining a loan.  The Debtors

23  executed a deed of trust (the "Deed of Trust") encumbering the

24  Property to secure the Note.  The terms of the Note required

25  monthly payments over thirty years based on payment options

26  including a payment comprised only of accrued interest, a payment

27

28                                -3-

comprised of fully amortized principal and interest, or a payment comprised of amortized principal and interest over a fifteen-year term.  The Debtors allege that the Note and Deed of Trust "did not specifically include either property taxes nor [sic] property insurance by escrow."  FAC, ¶ 30.

The FAC alleges that at the time the loan was made it allegedly "specified service of the loan" by MERS.  Although not specifically alleged, the FAC strongly implies that The Note and Deed of Trust were later assigned to IndyMac Bank, FSB ("IndyMac").  IndyMac was subsequently closed by the Federal Deposit Insurance Corporation and a new entity, IndyMac Federal Bank, FSB ("IndyMac Federal"), a "bridge bank," was formed to which the assets of IndyMac, including the Note and Deed of Trust, were transferred.  The Note and Deed of Trust, along with other assets of IndyMac were then allegedly "passed through" IMB HoldCo, IMB Management, OneWest Venture and OneWest Group to OneWest Bank.

The Debtors commenced this chapter 13 bankruptcy case (the "Bankruptcy Case") on July 2, 2009.  OneWest Bank filed a secured claim (the "Claim") in the Bankruptcy Case on August 27, 2009. The Claim is filed in the amount of $290,286.96.

The Debtors allege that "Defendant, as a matter of normal business practice, conducts an 'Escrow Analysis' pursuant to RESPA upon notice of a bankruptcy filing."  FAC, ¶ 42.  An escrow analysis allegedly analyzes the advances made by the lender in the twelve months prior to the bankruptcy filing for the purposes

-4-

of paying of property taxes, insurance and other costs related to
the security for a loan and projects those costs into the future
in order to determine the amount that the borrower will be
required to pay for those costs in the future.  The escrow
analysis also allegedly compares the amounts advanced by the
lender for these costs to the amounts paid into an escrow account
by the borrower for payment of those costs; if the result shows
that the lender has advanced funds in excess of what the borrower
has paid into the escrow account, the lender will generate a
notice of a post-petition increase in the regular monthly
mortgage payment.  The increase is allegedly intended to recoup
the advances paid by the lender in excess of the payments made by
the borrower to the escrow account.  The notices specifying the
post-petition increases in payments are sent to the debtor
borrower and the chapter 13 trustee.

The Debtors allege that as a result of receiving a notice of
a post-petition payment increase, the chapter 13 trustee takes
action which results in the collection by the trustee of the
increased payment as specified in the lender's notice, which
action includes objections to confirmation or motions to dismiss
if the debtor is not proposing to pay the full amount of the
increased payment.  The Debtors allege that in generating and
sending the notices based on post-petition escrow analyses as
described above, the "Defendants" fail to distinguish between
pre- and post-petition escrow advances and improperly collect on
a claim for a pre-petition debt through the ongoing monthly

mortgage payment.  The Debtors allege that this practice violates the automatic stay of 11 U.S.C. § 362(a).

In this case, the Debtors allege that named defendant IndyMac Federal Bank, FSB ("IndyMac Federal") generated an escrow account disclosure statement prior to the petition date on April 29, 2009, which statement reflected an increase in the Debtors' monthly payment to a total payment amount of $2,782.68, comprised of $1,678.79 in principal, and interest, $380.21 for escrow items and $465.58 included for the purpose of recovering an escrow shortage.  On or about March 16, 2010, after the petition date, "Defendants" then allegedly sent the chapter 13 trustee a letter stating that the disbursement on the secured claim being made by the chapter 13 trustee through the plan was incorrect, and that the correct monthly payment was $2,524.58.  The Debtors allege that the aforementioned post-petition notice given to the trustee regarding the "correct" monthly loan payment constitutes a violation of the automatic stay because the part of the amount of the payment asserted by the "Defendants" to be the correct payment includes amounts that are intended by the lender to be an attempt recover a pre-petition escrow shortage.

The Debtors also allege that the Defendants' violated RESPA by (1) failing to notify the Debtors when the note and deed of trust were transferred; (2) assessing more "risk" in the Defendants' escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges

improperly force-placing insurance when the Debtors had paid for insurance themselves; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  The Debtors specifically cite 12 U.S.C. § 2604 as the basis for their claims for RESPA violations.

Finally, the Debtors allege that the "Defendants," were engaged in a civil conspiracy for the purpose of "recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtor" by means of the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.

In addition to the facts alleged by the Debtors in the FAC summarized above, the court takes judicial notice of the Deed of Trust dated June 26, 2007 (Dkt. 31 at 2), copies of which were submitted by the Moving Defendants with this motion.  In the Ninth Circuit, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.1998), superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir.2006); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001).  In this case, the Deed of Trust is referenced in the FAC but is not explicitly incorporated therein.  The Debtors do not question the authenticity of the Deed of Trust.

-7-

Having taken judicial notice of the Deed of Trust, the court notes, contrary to the Debtors' allegations in the FAC, that the Debtors actually obtained the loan that is the subject of this adversary proceeding from American Mortgage on June 26, 2007, not March 10, 2006, and that the Deed of Trust does provide as part of its uniform covenants that the Debtors shall pay the lender periodic payments of amounts due for taxes, assessements, items that can attain priority over the Deed of Trust as a lien or encumbrance on the Property, and insurance premiums.  (Dkt. 31 at 5).

**ANALYSIS**

The Law Applicable to A Motion For Judgment on the Pleadings

A judgment on the pleadings under Rule 12(c) "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998).  Although the caption of this motion indicates that it is a motion for a judgment on the pleadings pursuant to Rule 12(c), the motion and the prayer contained in the supporting memorandum of points and authorities requests dismissal of the FAC without leave to amend.  However, pursuant to Fed. R. Civ. P. 12(h)(2), a motion made pursuant to Rule 12(c) may be used to raise a defense under Fed. R. Civ. P. 12(b)(6) that a complaint fails to state a claim upon which relief may be granted.  In this case, the Defendants raised a defense under Rule 12(b)(6) as their

first affirmative defense in their answer to the FAC filed on
July 15, 2010 (Dkt. 92 at 17).

The following sets forth the legal standard for dismissal of
a complaint where the complaint fails to state a claim on which
relief may be granted:

> The purpose of a motion to dismiss under Rule 12(b)(6) of
> the Federal Rules of Civil Procedure, made applicable here
> under Fed. R. Bankr. P. 7012, is to test the legal
> sufficiency of a plaintiff's claims for relief.  In
> determining whether a plaintiff has advanced potentially
> viable claims, the complaint is to be construed in a light
> most favorable to the plaintiff and its allegations taken as
> true.  Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40
> L.Ed.2d 90 (1974);  Church of Scientology of Cal. v. Flynn,
> 744 F.2d 694, 696 (9th Cir.1984). . .

Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re
Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho
2000).

In addition, under the Supreme Court's most recent
formulation of Rule 12(b)(6),  a plaintiff cannot "plead the bare
elements of his cause of action, affix the label 'general
allegation,' and expect his complaint to survive a motion to
dismiss."  Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009).
Instead, a complaint must set forth enough factual matter to

-9-

establish plausible grounds for the relief sought.  <u>See Bell Atl.</u>
<u>Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-66 (2007).  ("[A]
plaintiff's obligation to provide 'grounds' of his 'entitle[ment]
to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do.").  Factual allegations must be enough to raise a right
to relief above the speculative level.  <u>Id.</u>, citing to 5 C.
Wright & A. Miller, <u>Fed. Practice and Procedure</u> § 1216, at 235-36
(3d ed. 2004) ("[T]he pleading must contain something more. . .
than . . . a statement of facts that merely creates a suspicion
[of] a legally cognizable right of action").

In addition, the court notes the following:

> A dismissal under Rule 12(b)(6) may be based on the
> lack of a cognizable legal theory or on the absence of
> sufficient facts alleged under a cognizable legal
> theory. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir.
> 2001); <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d
> 696, 699 (9th Cir. 1988). . . the Court is not required
> "to accept as true allegations that are merely
> conclusory, unwarranted deductions of fact, or
> unreasonable inferences." <u>Sprewell v. Golden State</u>
> <u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Courts
> will not "assume the truth of legal conclusions merely
> because they are cast in the form of factual
> allegations." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328

-10-

F.3d 1136, 1139 (9th Cir. 2003); accord W. Mining
Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).
Furthermore, courts will not assume that plaintiffs
"can prove facts which [they have] not alleged, or that
the defendants have violated . . . laws in ways that
have not been alleged." Assoc. Gen. Contractors of
Cal., Inc. v. Cal. State Council of Carpenters, 459
U.S. 519, 526; 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).
. .

Toscano v. Ameriquest Mortg. Co., 2007 U.S. Dist. LEXIS 81884
(E.D. Cal. 2007).

A motion for judgment on the pleadings under Rule 12(c) is
"essentially equivalent to a Rule 12(b)(6) motion to dismiss, so
a district court may 'dispose of the motion by dismissal rather
than judgment.'" Technology Licensing Corp. v. Technicolor USA,
Inc., 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting Sprint
Telephony PCS, L.P. v. County of San Diego, 311 F.Supp.2d 898,
902-03 (S.D.Cal.2004)).

If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted,
"[the] court should grant leave to amend even if no request to
amend the pleading was made, unless it determines that the
pleading could not possibly be cured by the allegation of other
facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir.
1995). In other words, the court is not required to grant leave

-11-

1  to amend when an amendment would be futile. <u>See</u> <u>Toscano</u>, 2007

2  U.S. Dist. LEXIS 81884 (<u>citing</u> <u>Gompper v. VISX, Inc.</u>, 298 F.3d

3  893, 898 (9th Cir. 2002)).  Similarly, a court may also grant

4  leave to amend in response to a Rule 12(c) motion "if the

5  pleadings can be cured by further factual enhancement."

6  <u>Technology Licensing Corp.</u>, 2010 WL 4070208 at *3.

7

8                  <u>Dismissal of Non-OneWest Bank</u>

9              <u>Moving Defendants Without Leave to Amend</u>

10      Before turning to an analysis of each of the enumerated

11  claims for relief set forth in the FAC, the court first addresses

12  the inclusion of named defendants IMB HoldCo, IMB Management,

13  OneWest Group and OneWest Venture (collectively, the "Non-OneWest

14  Bank Defendants") in the FAC, which parties were not named as

15  defendants in the initial complaint filed on February 3, 2010.

16  The FAC identifies the Non-OneWest Bank Defendants and alleges

17  that each of the Non-OneWest Bank Defendants held an interest in

18  the loan at some time or provided loan servicing, but does not

19  contain any specific allegations relating to conduct of the Non-

20  OneWest Bank Defendants with respect to the Bankruptcy Case.

21  Instead, the allegations in the FAC only allege that OneWest Bank

22  filed a proof of claim in the bankruptcy case and sent notices to

23  the Debtors regarding the amount of her monthly mortgage payment.

24      To the extent that any conduct of the Non-OneWest Bank

25  Defendants is alleged in the FAC at all, the Non-OneWest Bank

26  Defendants are only vaguely and ambiguously identified with the

27

28                              -12-

label "Defendants," "Defendant" or "defendant."  In light of the
allegations in the FAC, which specifically allege that only
OneWest Bank has sought to enforce the secured claim in the
Debtors' bankruptcy case by the filing of a proof of claim, the
Debtors' vague allegations are insufficient to state any
plausible claim for relief as against the Non-OneWest Bank
Defendants.

<u>Dismissal of Third Claim for Relief (Violation of 11 U.S.C. §</u>
<u>362(k)(1)) Without Leave to Amend</u>

The Defendants' request for judgment on the pleadings with
respect to the third claim for relief is denied, and the claim is
dismissed without leave to amend as to all named defendants, but
without prejudice to the inclusion of a claim for violation of
the automatic stay in an amended complaint, as discussed, <u>infra</u>,
in connection with the second claim for relief.

The third claim for relief alleges a violation of 11 U.S.C.
§ 362(k)(1).  Section 362(k)(1), however, does not create a right
of action but governs the available remedies and measure of
damages for a violation of a stay provided by § 362.  As a
result, because the Debtors cannot state a claim for a violation
of § 362(k)(1), the claim is dismissed without leave to amend.

<u>Dismissal of OneWest Bank With Leave to Amend</u>

Having addressed the Debtors' allegations with respect to
the Non-OneWest Bank Defendants, the court now addresses each of

the Debtors' first, second, fourth and fifth claims for relief
with respect to OneWest Bank.

### 1. *First Claim for Relief: (Declaratory Relief)*

This claim for relief is dismissed as to OneWest Bank with
leave to amend.

The facts alleged by the Debtors establish the existence of
a dispute between the Debtors and some, if not all, of the named
defendants regarding the correct amount of the ongoing monthly
payments to be made by the Debtors under their note and deed of
trust obligations, the correct method by which the escrow
analysis should be prepared, and the proper amount of the pre-
petition claim based on the note and deed of trust obligation.

The first claim for relief fails, however, to distinguish
adequately among the named defendants with respect to the
aforementioned disputes.  The Debtors have not alleged facts
supporting a need for declaratory relief between themselves and
all of the named defendants, and, as a result, the defendants
have not been given fair notice of the claims being alleged
against each of them. See Erickson v. Pardus, 551 U.S. 89, 93
(2007)(under Fed. R. Civ. P. 8, the plaintiff need only provide a
short and plain statement of the claim for relief, but must also
give the defendant fair notice of the claims being alleged
against it).  The Debtors' allegations that a controversy exists
between themselves and "Defendants" is insufficient.  It appears,
based on the Debtors' general allegations, that their claim for

declaratory relief is relevant only to the Debtors and OneWest
Bank, the only entity alleged to have taken an active role in
enforcing the Claim in ths bankruptcy case.  However, the Debtors
are given leave to amend to clarify the exact nature of the
dispute between themselves and each of the remaining named
defendants, to the extent such a dispute exists.

   2.   *Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*

        This claim for relief is dismissed as to OneWest Bank with
leave to amend.

        The Moving Defendants argue that the facts alleged by the
Debtors do not constitute a violation of the automatic stay of 11
U.S.C. § 362(a).  The Moving Defendants point out that the FAC
does not allege the sending of any post-petition notices under
RESPA to the Debtors, and that, at most, the Debtors are claiming
that the filing of an allegedly erroneous proof of claim
constitutes a violation of the automatic stay.

        The Moving Defendants rely heavily on the recent decision of
the Ninth Circuit Bankruptcy Appellate Panel in In re Zotow, 432
B.R. 252 (9th Cir. BAP 2010).  The facts underlying Zotow are
similar to those alleged in the instant adversary proceeding.
The Zotows were debtors in chapter 13 who objected to a proof of
claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows
objected to BAC's claim on the ground that the Zotows' pre-
petition escrow account shortages should have been listed in the
proof of claim.  Rather than include the shortage in the proof of

-15-

claim, BAC had instead performed an escrow analysis and had sent
the debtors and the chapter 13 trustee a post-petition notice
which indicated an increase in their ongoing monthly installment
payment into the escrow account due to the pre-petition shortage.
The notice stated that it was being furnished for informational
purposes only and should not be construed as an attempt to
collect against the debtors personally.   The notice also stated
that if the debtors were involved in a chapter 13 proceeding the
debtors were required to obey all orders of the court in the
event that the amount specified in the notice conflicted with any
order or requirement of the court.   Based on the notice, the
chapter 13 trustee made several ongoing post-petition installment
payments to BAC from the debtors' plan payments based on the
amount of the payments as specified in the notice.   The chapter
13 trustee also objected to confirmation of the debtors' chapter
13 plan on the ground that the debtors' proposed plan payment was
insufficient to fully fund the plan based on the increased
payment amount set forth in the notice sent by BAC.

The debtors argued that BAC's attempt to collect the escrow
shortage, a pre-petition debt, by increasing the ongoing post-
petition installment payment through the chapter 13 plan rather
than including the escrow shortage in the proof of claim
constituted a violation of the automatic stay.   Following an
evidentiary hearing the bankruptcy court concluded that BAC
should have included the pre-petition escrow shortage in its
proof of claim, but also found that BAC had not violated the

1    automatic stay.

2        The BAP affirmed the bankruptcy court's conclusion that BAC

3    had not violated the automatic stay.  As the BAP stated,

4

5        the automatic stay does not prevent all communications

6        between a creditor and the debtor. Morgan Guar. Trust Co. of

7        N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th

8        Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor),

9        366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a

10       communication is a permissible or prohibited one is a

11       fact-driven inquiry which makes any bright line test

12       unworkable. See Henry v. Assocs. Home Equity Servs., Inc.,

13       272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's

14       activities involved coercion or harassment is fact-specific

15       inquiry); Cousins v. CitiFinancial Mortgage Co. (In re

16       Cousins), 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting

17       that determining whether a violation of the automatic stay

18       occurs can be complicated).

19

20   Zotow, 432 B.R. at 258.

21       The BAP went on to identify prohibited communications as

22   "those where direct or circumstantial evidence shows the

23   creditors actions were geared toward collection of a pre-petition

24   debt, were accompanied by coercion or harassment, or otherwise

25   put pressure on the debtor to pay. . . . [M]ere requests for

26   payment and statements simply providing information to a debtor

27

28                              -17-

are permissible communications that do no run afoul of the stay."
Id. "In the end, one distinguishing factor between permissible
and prohibited communications is evidence indicating harassment
or coercion. When such evidence is present, a disclaimer on the
communication that it was being sent 'for informational purposes
only' is ineffective." Id. at 259. The BAP identified three
significant facts in Zotow that informed its conclusion that the
post-petition notice sent by BAC did not violate the automatic
stay: (1) the notice was not in the nature of an invoice and
merely set forth the fact of the debt; (2) BAC did not send the
notice with a payment coupon or envelope and without any
informational component; and (3) BAC sent only one notice to the
debtors, and the information contained in that notice was
information that the debtors would need to propose a feasible
chapter 13 plan. Id. at 259-60. The Zotow court also found that
BAC did not violate the automatic stay by receiving increased
post-petition payments from the chapter 13 trustee.

        In the instant case, the court does not adopt the Moving
Defendants' narrow view that, since the FAC alleges that only one
escrow account disclosure statement, or "RESPA notice" was sent
to the Debtors, before the commencement of the bankruptcy case,
that the only basis for any claim for violation of the automatic
stay could be a claim relating to the filing of the Claim. The
Moving Defendants overlook the Debtors' allegations regarding the
letter sent to the chapter 13 trustee on or about March 16, 2010,
which letter allegedly informed the chapter 13 trustee that the

-18-

monthly loan payment had increased.

The question is whether the Debtors' allegation that the post-petition letter notifying the chapter 13 trustee of an increase in the Debtors' monthly payment is sufficient to elevate the alleged actions of one or more of the Moving Defendants to a violation of the automatic stay.  The court concludes that the allegations contained in the FAC are not sufficient.  The court does not reach this conclusion because the sending of a letter or notice regarding post-petition payment increases can never be a violation of the automatic stay; the court does not foreclose the possibility that a creditor's sending of a letter or notice, whether informational or not, may rise to the level of coercion or harassment.  As the Zotow court pointed out, whether communications are prohibited or permitted or whether they rise to the level of coercion or harassment are fact-driven inquiries for which there are no bright-line rules.

Instead, the court concludes that the allegations in the FAC and under the second claim for relief are not sufficient to state a claim upon which relief may be granted because, as with the first claim for relief, they do not give each of the Moving Defendants and the other named defendants fair notice of the claims being alleged against them.  As with the first claim for relief, the general allegations in the FAC and in the second claim for relief are replete with vague references to "Defendants," "defendants" and "Defendant," with no apparent effort made to distinguish between each of the eleven defendants

-19-

named in the caption of the FAC.

In addition, other than the sending of a letter regarding a payment increase, the FAC is devoid of other allegations which, construed in the light most favorable to the Debtors, would show coercive or harassing behavior on the part of any of the Moving Defendants.  As a result, the second claim for relief is dismissed with leave given to the Debtors to amend the FAC to specify which of the named defendants committed acts which allegedly violated the automatic stay and, to the extent that they exist, to allege additional facts regarding the sending of the Notice or other acts committed in violation of the automatic stay.

3.   *Fourth Claim for Relief (Violation of Real Estate Settlement Practices Act (RESPA))*

This claim is dismissed as to OneWest Bank with leave to amend.

The fourth claim for relief alleges that the "Defendants" violated RESPA by (1) failing to notify the Debtors when the note and deed of trust were transferred; (2) assessing more "risk" in the "Defendants'" escrow analysis calculations than is allowed by RESPA; (3) improperly accessing the escrow account for payment of property taxes and insurance; (4) failing to credit back charges for improperly force-placing insurance; and (5) performing an improper escrow analysis that resulted in incorrect notices of increase in payments.  However, the Debtors cite only 12 U.S.C. §

2604 in connection with the claim.  Section 2604, however,
governs the form and distribution of special information booklets
regarding the nature and costs of real estate settlement
services.

In their written opposition, the Debtors have identified
other sections of RESPA that they assert were violated by the
Moving Defendants.  These sections, however, are not identified
in the FAC.  In the context of a motion for a more definite
statement under Fed. R. Civ. P. 12(e), the Ninth Circuit has
stated, "even though a complaint is not defective for failure to
designate the statute or other provision of law violated, the
judge may in his discretion . . . require such detail as may be
appropriate in the particular case."  McHenry v. Renne, 84 F.3d
1172, 1179 (9th Cir. 1996).  Although the Moving Defendants have
filed a motion for judgment on the pleadings rather than for a
more definite statement, the court finds that McHenry v. Renne is
applicable here, insofar as a motion for a more definite
statement and a motion for judgment on the pleadings are both
concerned with the sufficiency of the plaintiff's pleading.  In
this case, the court dismisses the fourth claim for relief with
leave to amend as to the specific provisions of RESPA that the
Debtors assert were violated by one or more of the named
defendants because RESPA is a complex statute that covers several
sections of Chapter 27 of the United States Code.  Requiring the
Debtors to specify the specific provisions that they believe were
violated prevents both the Moving Defendants and the court from

-21-

guessing which provisions of RESPA the Debtors believe the Moving
Defendants violated and gives fair notice to all parties and the
court of the claims being asserted.

The fourth claim for relief is also dismissed with leave to
amend because, like the first and second claims for relief, it is
replete with vague references to "Defendants" and "defendants"
without any distinction between the eleven named defendants in
the caption of the FAC.  The allegations underlying the fourth
claim for relief do not give the remaining defendants fair notice
of the claims being asserted against them.  As a result, the
fourth claim for relief is dismissed with leave given to the
Debtors to amend the claim to specify which of the remaining
named defendants violated RESPA and the specific manner in which
they violated RESPA.

    4.  *Fifth Claim for Relief (Civil Conspiracy)*

This claim is dismissed as to OneWest Bank with leave to
amend.

Civil conspiracy is not an independent tort.  Instead it is
"merely a mechanism for imposing vicarious liability; it is not
itself a substantive basis for liability.  Each member of the
conspiracy becomes liable for all acts done by other pursuant to
the conspiracy, and for all damages caused thereby."  Favila v.
Katten Muchin Rosenman LLP, 188 Cal.App.4th 189, 206 (2010).  A
civil conspiracy is "activated by the commission of an actual
tort."  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7

-22-

Cal.4th 503, 511 (1994).

In addition, "[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.  The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose.  However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim.  Knowledge of the planned tort must be combined with intent to aid its commission."  Id. (citing Kidron v. Movie Acquisition Corp., 40 Cal.App.4th 1571, 1582 (1995).

Here, the Debtors allege that "Defendants" engaged in a conspiracy for the purpose of "recouping pre-petition claims from post-petition estate property resulting in systematic injury to debtor" by means the allegedly improper escrow analyses described above, concealing the post-petition collection of pre-petition claims, and objecting to confirmation of chapter 13 plans based on the improper escrow analyses.  These allegations, however, are not sufficient to state a claim that any of the named defendants were involved in a civil conspiracy.  The Debtors have not alleged any agreement between any of the named defendants to a common plan or design to commit a tortious act, nor have they alleged that any of the named defendants had actual knowledge that a tort was planned and that they concurred in the tortious scheme with knowledge of its unlawful purpose.  This claim for relief also suffers from the same defects as the first, second

-23-

1  and fourth claims for relief in that it also fails to distinguish
2  between any of the named defendants with respect to the alleged
3  civil conspiracy.  For these reasons, the court dismisses the
4  fifth claim for relief as to OneWest Bank with leave to amend.
5      Rather than issue judgment in favor of OneWest Bank, the
6  court dismisses the first, second, fourth and fifth claims for
7  relief in the FAC with leave to amend as to OneWest Bank because
8  the court finds that it is possible that the deficiencies
9  identified in the FAC may be cured with further factual
10  enhancement.  The court cautions the Debtors that the second
11  amended complaint must clearly identify which of the remaining
12  named defendants violated their legal rights and the specific
13  manner in which they violated those rights; if the Debtors fail
14  to do so those defendants who are not clearly connected with the
15  acts complained of will be dismissed without leave to amend.
16      The court will issue a separate order consistent with this
17  ruling.
18
19
20
21  Dated: JUL 1 4 2011
22                                    Thomas C. Holman
23                                    United States Bankruptcy Judge
24
25
26
27
28                                    -24-

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

### CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Joshua del Castillo
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Terry Loftus
1770 4th Ave
San Diego, CA 92101

DATED: 7/15/11

By: _____
**Deputy Clerk**